**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **THOMAS OTTER ADAMS** | ) |
| | ) |
|     **Plaintiff(s),** | ) |
| | ) |
| **v.** | ) |
| | )    **2:06-CV-959-WKW** |
| **CARTER DAVENPORT, ET AL.** | ) |
| | ) |
|     **Defendant(s).** | ) |
| | ) |
| | ) |

**ANSWER AND SPECIAL REPORT**

COME NOW the Defendants, **Carter Davenport, Kim Richardson, Mitchell Borders, Anthony Askew and Lewis Hulett**, by and through undersigned counsel, and in accordance with this Honorable Court's November 14, 2006 Order, offer the following Answer and Special Report:

**PARTIES**

1. The Plaintiff, Thomas Otter Adams, is Alabama Department of Corrections ("ADOC") inmate currently incarcerated in Easterling Correctional Facility ("ECF").

2. Defendant Carter Davenport is currently employed by ADOC as a Warden II at ECF.

3. Defendant Kim Richardson is currently employed by ADOC as a Correctional Officer I at ECF.

4. Defendant Mitchell Borders is currently employed by ADOC as a Correctional Officer I at ECF.

5. Defendant Anthony Askew is currently employed by ADOC as a Correctional Chaplain at ECF.

6.  Defendant Lewis Hulett is currently employed by ADOC as a Correctional Officer II at ECF.

## EXHIBITS

EXHIBIT 1 – Affidavit of Carter Davenport

EXHIBIT 2 – Affidavit of Lewis Hulett

EXHIBIT 3 – Affidavit of Anthony Askew

EXHIBIT 4 – Affidavit of Brian Mitchell

EXHIBIT 5 – Affidavit of Mitchell Borders

EXHIBIT 6 – Affidavit of Kim Richardson

EXHIBIT 7 – Supplemental Affidavit of Carter Davenport

## PLAINTIFF'S CLAIMS

Plaintiff alleges on October 11, 2006, he attended a segregation review board where his intention was to question his status and transfer request(s), but he was subjected to an interrogation by Warden Davenport regarding Plaintiff's hair.  Plaintiff states that the ADOC personnel present were Warden Davenport, Captain Sconyers, Chaplin Askew, Brian Mitchell, Sergeant Woods and Ms. Hayes.  Plaintiff alleges the he made clear that cutting his hair was against his religious beliefs. Warden Davenport ordered him to get a haircut.  Plaintiff claims Chaplain Askew mumbled some derogatory comment.  Plaintiff alleges his return to segregation after the board meeting was a punitive act.

Plaintiff further alleges that third shift officers Borders and Richardson participated in cutting Plaintiff's hair against his religious beliefs.

Plaintiff alleges inmates are not allowed shampoo and that he has been in segregation for over 485 continuous days at the time of the filing of this complaint.

## DEFENDANTS' RESPONSE

1.     The Defendants deny that they violated the Plaintiff's constitutional rights.

2.     The Defendants deny each and every material allegation not specifically admitted herein and demand strict proof thereof.

3.     The Plaintiff has failed to state a claim upon which relief may be granted.

4.     The Defendants are immune from suit under the Eleventh Amendment to the United States Constitution.

5.     The Defendants are immune from suit due to qualified immunity.

## STATEMENT OF FACTS

On October 11, 2006, Plaintiff/Inmate Thomas Adams attended an Institutional Segregation Review Board. Warden Carter Davenport observed that Plaintiff's hair was too long and instructed Plaintiff to get a haircut.  Though Plaintiff alleges he told Warden Davenport that cutting his hair was against his religious beliefs, Warden Davenport has no recollection of such a statement.   Brian Mitchell was attending the Segregation Review Board and does recall Plaintiff making said statement.  Plaintiff was assigned to the Segregation Unit at the time of this incident.

On October 17, 2006, Officers Kim Richardson and Mitchell Borders were assigned to the third shift in the segregation unit.  It is the responsibility of the third shift to give haircuts to the inmates.  Officers Richardson and Borders received instructions to give Plaintiff a haircut and they escorted him to the segregation lobby where Plaintiff

received a regulation haircut from the Segregation Institutional Barber. All inmates are issued hygienic items as needed.

Chaplain Anthony Askew was not present when Plaintiff received his haircut as haircuts are outside of his vocational jurisdiction. Chaplain Askew denies making any derogatory comment about the Plaintiff.

## ARGUMENT

### SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the Plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of facts become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317

(1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted].  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

## I. ADOC's grooming regulations are constitutional.

Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983.  He alleges that ECF's haircut policy violates his rights under the First Amendment's freedom of religion.

The governmental burden in sustaining its prison hair length regulations is that of showing a "substantial governmental interest" as established in *Martinelli v. Dugger,* 817 F. 2d 1499 (11th Cir. 1987).   Under the *Martinelli* line of cases, numerous prison-grooming regulations were upheld, such as haircut and shaving requirements. *See Harris*, 97 F. 3d at 503 and cases cited therein.

As the Eleventh Circuit noted, "[i]t is well established that states have a compelling interest in security and order within their prisons."  *Lawson v. Singletary*, 85 F. 3d at 512 (11th Cir. 1996); *see also Wilson v. Blakenship*, 163 F.3d 1284, 1295 (11th Cir. 1998) (internal citations omitted) (stating that "[p]rison officials have 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve order and discipline and to maintain institutional security'"). There are substantial security interests, such as the identification of escapees and the prevention of hiding weapons or contraband in hair, supporting haircut requirements in

prisons. *Harris,* 97 F. 3d at 504.    In *Harris,* the Court reviewed the Florida penal system's haircut regulation, which is similar to that of ECF, under the compelling state interest burden established by the stringent requirements of the Religious Freedom Restoration Act (RFRA)[1] and still refused to strike down the regulation.  The Court held that the regulation furthered a compelling governmental interest (identification of escapees and prevention of hiding contraband and weapons in hair) and that it was the least restrictive means of doing so.  *Harris*, 97 F. 3d at 504; *see also Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir. 1992) (determining that hair grooming regulations were "reasonably related to the prison's paramount security concern").

In *Martinelli*, the Plaintiff was a Greek Orthodox believer who challenged the prison regulation requiring him to have his haircut and be clean shaven.  *Martinelli, supra*. The Court held that the regulations were rationally related to a substantial governmental interest (maintaining prison security and identifying escapees).   Other circuits have also upheld such regulations based on similar considerations. *See, e.g., Scott, supra; Hall v. Bellmon*, 935 F. 2d 1106 (10th Cir. 1991) (holding that prison's haircut policy was reasonably related to a legitimate penological interest); *Iron Eyes v. Henry*, 907 F.2d 810, 814 (8th Cir. 1990) (identifying a rational relationship between a short-hair requirement and penological concerns).

ECF's haircut regulation, which is on page 12 of the ADOC inmate handbook, is similar to those addressed in *Martinelli* and *Harris*.  The same reasons supporting the regulation in those cases support the regulation in this case.  Keeping inmates' haircut short aids in the identification of escapees.  If not for the short regulation haircut, inmates

---

[1] RFRA was held unconstitutional by the Supreme Court in *City of Boerne v. Flores*, 521 US 507 (1997).

would appear differently than in their prison photographs and identification of escapees would be more difficult.  In addition, their hair is cut short upon arriving at ECF to reduce the spread of lice, for which all inmates are initially treated.  Furthermore, keeping hair shorter prevents inmates from hiding contraband and weapons in their hair.

ECF's haircut regulation furthers a substantial government interest, and even a compelling government interest, in maintaining the health and safety of inmates and prison employees and preventing escapes.  ECF's regulation is the least restrictive means of furthering this interest.  Therefore, the Plaintiff's claims should be dismissed.

## II. Segregation Claim

Plaintiff has made extremely sparse allegations concerning his status of being a segregation inmate.  First, Plaintiff states that he requested an interview with the Segregation Review Board to question and update his status.  He states the Board consisted of Warden Carter Davenport, Captain Sconyers, Chaplain Askew, Brian Mitchell, Sergeant Woods and Ms. Hayes.  Plaintiff then alleges he was taken "back" to segregation and alleges this action to be "punitive."  He states no allegation of why he should not have been taken back to segregation or of why he should not have been in segregation before the Board met.  He simply does not inform any defendant how they allegedly violated his constitutional rights.  Plaintiff also fails to state what constitutional right, if any, the defendants allegedly violated.  A reasonable defense cannot be mounted against such an allegation as it in no way puts the defendants on notice of what actions by the defendants are being challenged.

Likewise, the Plaintiff states his general displeasure with the length of time he has allegedly been in segregation, but in no way addresses any alleged impropriety in his

segregation. Plaintiff's sparse allegations simply fail to state a cause of action concerning his segregation status.

It should be noted for the Court's edification, that Inmate Adams was assigned to Administrative Segregation on June 21, 2005 for investigation of violation of rule # 62 – Intentionally Creating a Security, Safety or Health Hazard. Plaintiff had been observed intimidating other inmates associated with the Native American community. He was re-classed for Administrative Segregation on September 21, 2005 because he is considered "an inmate whose continued presence in the general population may pose a serious threat to self, other inmates or the security or orderly operation of the institution." Since his reclassification, Plaintiff has received several disciplinaries for negative behavior.

The Plaintiff purports to sue the Segregation Review Board which is not a legal entity capable of being sued. If it were a legal entity, it would not be a proper party pursuant to Alabama v. Pugh 438 US 781 (1978).

**III. Verbal Abuse**

Plaintiff alleges Chaplain Askew made a derogatory comment about him. The Chaplain denies this allegation. In *Stacy v. Ford* 554 F Supp 8 (ND Ga., 1982) the District Court held that verbal abuse or threats are insufficient grounds for relief under § 1983 and cited *Collins v. Lundy*, 603 F2d 825 (10th Cir. 1979) and *Ellingburg v. Lucas*, 518 F2d 1196 (8th Cir. 1975). Assuming arguendo, that derogatory comments were made, which they were not, the claim simply fails to state a cause of action.

**IV. The Defendants are immune from suit.**

Plaintiff's suit is barred under the doctrines of discretionary function and qualified immunity. Qualified immunity protects government officials from civil trials and liability

when their conduct "violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th Cir. 1998), quoting *Lassiter v. Alabama A&M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994). The Defendants are also entitled to discretionary-function immunity, which protects the discretionary acts of state employees from suit unless a plaintiff can show the employee acted maliciously or in bad faith. *Taylor v. Adams*, 221 F.3d 1254, 1261 (11th Cir. 2000). As Adams has not shown that the Defendants' acts violated clearly established law, or were done in bad faith, they are immune from suit.

To the extent that the plaintiff asserts his claims against the Defendants in their official capacities, the claims must fail because the Defendants are entitled to immunity via the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The Amendment not only bars suits against a state by citizens of another state, but it also bars suits against a state by that state's own citizens. See *Edelman v. Jordan*, 415 U.S. at 663, 94 S. Ct at 1347 and *Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S. Ct. 504, 33 L.Ed. 842 (1890). All Defendants were acting within the scope of their official duties in this instance on behalf of the State of Alabama. The State of Alabama has not waived its immunity or consented to the filing of such a suit. The defendants are absolutely immune from suit in this instance. U.S. Const. amend. 11; Art. I, § 14, ALA. Const. (The State of Alabama shall never be made a defendant in any court of law or equity); see also

*Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (a claim against a state official in his official capacity is a claim against the state).

## **CONCLUSION**

There are no genuine issues of material fact, and the Defendants are entitled to judgment as a matter of law.  WHEREFORE, the Defendants respectfully request that this Honorable Court dismiss the claims against them.

Respectfully submitted,

TROY KING
Attorney General

/s/ *Jeffery H. Long*
Jeffery H. Long
Assistant Attorney General

ADDRESS OF COUNSEL:
Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7555
(334) 242-2433 - fax

## **CERTIFICATE OF SERVICE**

I hereby certify that I have, this the 22nd day of December, 2006, electronically filed the foregoing with the Clerk of Court using the CM/ECF system and served a copy of the foregoing upon the Plaintiff, by placing same in the United States Mail, postage prepaid and properly addressed as follows:

Thomas Otter Adams, AIS 100612
Easterling Correctional Facility
200 Wallace Drive
Clio, AL 36017

/s/ *Jeffery H. Long*
Jeffery H. Long

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THOMAS OTTER ADAMS, #100612      )
    Plaintiff,      )
              )
VS.      )
              )     CASE NO. 2:06-CV-959-WKW
              )
CARTER F. DAVENPORT, WARDEN II, et al      )
    Defendant (s)      )

### AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Carter F. Davenport, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Carter F. Davenport, and I am presently employed as Warden II, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On October 11, 2006, Inmate Thomas Adams #100612 attended the Institution Segregation Review Board. I observed that Inmate Adams was in need of a haircut. I told Inmate Adams to get a haircut.

Inmate Adams stated that he told me it was against his religion to cut his hair. I cannot recall he stated that.

All ADOC Inmates has a Personal Appearance Procedures (Exhibit 1 Page 12), regular haircut off the neck and ears, sideburns no lower than mid ear, clean-shaven. Inmate Adams was assigned to the Segregation Unit; all inmates are issued hygiene items as needed. Inmates will maintain a haircut.

I have not violated any of Inmate Adams' Constitutional Rights.

_(signature)_
CARTER F. DAVENPORT



EXHIBIT
1
PENGAD-Bayonne,N.J.

Affidavit – Carter F. Davenport
Civil Action – 2:06-CV-959-WKW
Page 2


SWORN TO AND SUBSCRIBED TO before me this the ___19th___ day of
___December___, 2006.                    ___Linda E. Teal___
                                         NOTARY PUBLIC

My Commission Expires: ___7-15-07___

# ALABAMA

# DEPARTMENT OF CORRECTIONS

## INMATE HANDBOOK



*Published by Research, Monitoring, and Evaluations Unit*
*August 1, 2000*

# INMATE HANDBOOK PROCEDURES:
# LOOSE LEAF USE AND MAINTENANCE
## *(This page is for DOC personnel ONLY!)*

1.  **LOCATION:**
    A.  **Law Library.** A printed copy of the handbook will be located in the inmate law library.
    2.  **Other Locations.** In facilities not having a law library, a copy of the handbook will be located in the office of the shift commander/director or in a place (as determined by the Warden/Director) which makes the handbook readily available for inmate use.
2.  **DISPLAY AND MAINTENANCE:**
    A.  **Display.** The handbook will be contained in a binder labeled Inmate Handbook.
    3.  **Maintenance.**
        1.  MASTER COPY. A Master Copy of the handbook will be located in the Department's internal computer network's Public Folder.
        2.  RESPONSIBILITY OF WARDEN/DIRECTOR. The Warden/Director or his designee is responsible for:
            a.  Regularly replacing worn or damaged sections of the handbook using reproductions of the master copy.
            b.  Timely updating notification to RME when the handbook needs to reflect changes in departmental policy. (NOTE: Changes to the handbook are to be made upon the authorization of the Commissioner only.)
            c.  An inmate's orientation should be conducted as soon as possible after their arrival to the facility and no more than five (5) working days after the inmate's arrival to include the location and contents of the Inmate Handbook. Legally, the inmate must know what is expected of him/her.

**This portion of the Inmate Handbook will be maintained with the Master Copy. THIS PAGE FOR CORRECTIONAL PERSONNEL ONLY.**

Michael W. Haley, Commissioner

# INMATE HANDBOOK INDEX

| NUMBER | TITLE | Page |
|--------|-------|------|

**GENERAL INFORMATION**

| | | |
|--------|-------|------|
| 001 | Introduction | 1 |
| 002 | Reception Process | 2 |
| 003 | Institutional Classification Unit | 3 |
| 004 | Institutional Corrections & Social Service Staff | 5 |
| 005 | Custody Classifications | 7 |

**INSTITUTIONAL LIVING**

| | | |
|--------|-------|------|
| 100 | Institutional Living | 10 |
| 101 | Living Assignment | 11 |
| 102 | Personal Appearance | 12 |
| 103 | Clothing | 13 |
| 104 | Dining Hall | 14 |
| 105 | Visitation | 15 |
| 106 | Correspondence | 16 |
| 107 | Packages and Money | 17 |
| 108 | Checking of Mail and Packages | 18 |
| 109 | Canteen | 19 |
| 110 | Trading, Gambling, and Bartering | 20 |
| 111 | Recreation | 21 |
| 112 | Law Library | 22 |
| 113 | Religion | 23 |
| 114 | Medical Treatment | 24 |
| 115 | Educational and Vocational Training | 25 |

**LEAVES AND PASSES**

| | | |
|--------|-------|------|
| 200 | Leave and Pass Program | 26 |

**COMMUNITY PROGRAMS**

| | | |
|--------|-------|------|
| 300 | Work Release Community Based Facilities | 28 |
| 301 | Supervised Intensive Restitution (SIR) | 29 |

**REDUCTION OF SENTENCE**

| | | |
|--------|-------|------|
| 400 | Good Time Deductions From Sentences | 30 |
| 401 | Parole | 31 |

**INSTITUTIONAL RULES AND INMATE BEHAVIOR**

| | | |
|--------|-------|------|
| 500 | Conduct Reports | 33 |
| 501 | Schedule of Rules and Violations | 35 |
| 502 | Authorized Punishments for Minor Violations | 46 |
| 503 | Authorized Punishments for Major Violations | 47 |
| 504 | Institutional Disciplinary Procedure | 28 |
| 505 | Segregation Review Board | 49 |

**RELEASE**

| | | |
|--------|-------|------|
| 600 | Dischage | 50 |

**INMATE SUPPORT GROUPS**

| | | |
|--------|-------|------|
| 700 | Alabama Volunteers in Corrections (AVIC) | 51 |

| Number 001 | INTRODUCTION |
|---|---|

There are rules, such as the laws of the United States or the State of Alabama, which apply to everyone. There are rules for people where they work, and rules for members of the family in which they live. It is important to follow these rules so that we can live and work together without problems and without unnecessary friction. There are rules and regulations for inmates committed to the custody of the Alabama Department of Corrections. They are designed to help us live together as safely and as comfortably as possible.

This handbook is designed to serve you as a guide for institutional living by setting forth the major rules, regulations, and policies of the Alabama Department of Corrections. These rules apply to all inmates regardless of the institution to which assigned. Each institution, however, will have additional specific rules and policies that apply only to that institution. You will be made aware of those rules during orientation shortly after your arrival at the institution. You are required to follow the rules in this handbook and the rules of the institution. You can expect that any violation of the rules will result in disciplinary action.

We hope that you will find this handbook a useful source of information concerning the conditions of your incarceration. If you have a question that is not answered in this handbook, you may request an explanation from your Classification Specialist or, through the chain of command, from the Warden or Director.

| Number 002 | **RECEPTION PROCESS** |
|---|---|

Upon arriving at the Reception and Classification Center (R&CC) at Tutwiler or Kilby, you will be photographed and fingerprinted. You will receive a complete physical and dental examination by medical and dental professionals. You will be interviewed by Classification Specialists who will classify you on the basis of psychological tests and your response to questions asked. They will discuss your background, education, employment program needs, and other important areas of your life. It is important that you respond truthfully and completely, and that you include any family information you feel important and necessary to be a part of your record. Any information given by you may later be checked for accuracy by the Classification Division.

The information provided by you will be used to determine your assignments to institution and programs. While at R&CC, or soon thereafter, a time sheet which shows the length of your sentence(s) and possible release date will be provided to the Classification Specialist at the institution where you are assigned.

Psychological testing will be conducted during the first week after your arrival. Under normal circumstances, your classification will be completed within two weeks after your arrival.

Your assignment to an institution is determined by the Central Classification unit based on your security level, conduct record, and program need. Every effort is made to place you in the least restrictive custody level and custody level and institutional setting as possible, while at the same time having due consideration for safety of the public, the staff, for other inmates and for yourself.

| Number 003 | INSTITUTIONAL CLASSIFICATION UNIT |
|---|---|

The institutional classification unit is responsible for classification, psychological evaluation and program assignments.  Upon arrival at one of the institutions, you will be assigned to a classification team with the exception of work release or minimum institutions.  This team will be made up of a Classification Specialist as chairperson and a Psychologist and Correctional Officer as members.  The classification team will be responsible for your classification and will be your primary contact with the staff while at the institution.  The classification team at minimum camps and work release centers will be smaller with different members.

Classification includes determining the proper security level, custody, institutional job and program plan, and may include a plan for educational or vocational training and substance abuse treatment.  A member of your classification team will be available to talk with you or to provide counseling upon your request.

Periodically after the first classification, depending on how much time you have left to serve, your institutional file will be checked to see whether any further program changes are necessary or desirable.

A Job Placement Board will assign you to an institutional job as your regular work assignment.

You will receive a classification review at least once a year by the Classification Review Committee.  This committee will consist of a Classification Specialist as chairperson, and a psychologist, and the Warden, Deputy Warden, or his designee, as members.  At this review, your work performance and general day to day conduct record will be examined.  Reports will be taken from your work supervisor,

training instructors, the prison Chaplain, and Security Staff.  Based upon these documents, the committee may make recommendations regarding changes in your custody and security level, institutional placement, education, vocational training, good time earning status, and program assignments.

| Number 004 | INSTITUTIONAL CORRECTIONS & SOCIAL SERVICE STAFF |
|---|---|

The Warden is in charge of and manages the operation of the institution. His decisions and actions are based on the policies and procedures prescribed by the Department of Corrections and his best judgement. If you still feel the need for advice and assistance after all other sources have been exhausted, you may request an interview with the Warden or Director. It is necessary, however, that you first take advantage of the assistance available to you in the chain of command.

The Assistant Warden is the Wardens chief assistant. He directs staff planning, discipline and security. You may request an interview with the Assistant Warden by completing the Inmate Request Form provided.

The Captain of the Guard is the supervisor of the correctional staff. He/she is available for answering your questions, advising you, and is interested in your progress, adjustment and welfare.

The Shift Lieutenant supervises institutional activities during his shift. The Lieutenant is mainly concerned with security of institutional quarters and the operation of their respective shifts. He is also available for answering any questions you may have.

Correctional Officers work under the direct supervision of the Shift Lieutenant. Their job is to maintain a safe and secure institutional environment.

The Business Manager handles all inmate money and is responsible for all inmate monies on deposit. Deposit or withdrawal of funds from your account is made

through the Business Manager. Also, if it is necessary for you to file legal papers or to have legal papers notarized, you may submit a request to the Business office for this service.

Questions about your security level, custody, institutional assignment, time sheet or program should be directed first to the Classification Specialist. For more information on time sheets see Rule 400. The Classification Specialist is familiar with all of the institutions in the Department and can answer questions about the program offered at each of the facilities. Questions about Work Release and SIR should also be directed to the Classification Specialist.

Psychologists assist inmates with emotional or behavioral problems. They administer psychological tests to learn more about you and your abilities. This information is necessary before they can make recommendations for your classification, job assignments, and counseling needs.

| Number 005 | CUSTODY CLASSIFICATIONS |
|---|---|

It is important that you are placed in the correct custody status. The Department of Corrections does not want to place you in a more restrictive level of custody than is necessary for security purposes.

You will be classified to one of the six custody classifications which are defined below.

1.   **Maximum Custody.** The most restrictive custody level. It indicates that an inmate may be prone to violent behavior or is an extreme escape risk and needs to be housed in a single cell. Normally, maximum custody inmates are allowed to leave the cell only for exercise and showering.

2.   **Close Custody.** Inmates in close custody may be permitted some recreational activities in small groups. This custody level may be used for inmates considered to be a high escape risk, or those having had incidents of violent behavior within the preceding year.

3.   **Medium Custody.** Medium custody is less restrictive than Close Custody and is for inmates who are considered a security risk or who have shown some type of behavior problems, and where there is a need for additional observation and evaluation; or who has been convicted of certain serious crimes, such as a sex offense. Within this custody level, an inmate may be housed in dormitory-type living quarters. When outside an institution, an inmate in medium custody must be under the supervision of an armed Correctional Officer.

4.   **Minimum Custody.** This custody level is for inmates who have adjusted to

institutional rules, who are not escape risks, and who have accepted responsibility for their own behavior. They may work under the supervision of either correctional or non-correctional staff and may be permitted outside of the institution without direct supervision of an armed Correctional Officer. However, an inmate in minimum custody serving more than one consecutive life sentence may not be permitted outside a correctional facility without direct supervision of custodial staff. Also, inmates in minimum-in custody must be under the supervision of a correctional employee or law enforcement personnel.

5.    **Community Custody.** This custody is for those inmates who have shown the ability to adjust to a semi-structured environment, and who are in that stage of incarceration where a strong reintegration effort is needed. An inmate in this custody level will be supervised and accounted for during the time spent at the work release center and while participating in center activities. Inmates who are approved for placement in the Supervised Intensive Restitution (SIR) program or on Pre-Discretionary Leave (PDL) are also in community custody.

**Security Levels.** During classification, you will also be given a score on a risk assessment instrument to determine the security level of the institution you may be assigned. The six institutional security levels are described below.

1.    **Level I** is the security level for community work release centers or SIR.

2.    **Level II** is the security level for community work centers or honor camps such as Red Eagle Honor Farm, Elmore Correctional Center, J. O. Davis Correctional Facility, the Farquhar Cattle Ranch, Childersburg Community Work Center, Loxley Community Work Center, and Frank Lee Youth Center.

3.    **Level III** is the security level for Kilby Correctional Facility (permanent party) and Hamilton Aged and Infirmed Center.

4.    **Level IV** is the security level for Bibb Correctional Facility, Draper Correctional Facility, Staton Correctional Center, Fountain Correctional Facility, Ventress Correctional Facility, Easterling Correctional Facility, Bullock Correctional Facility, and Limestone Correctional Facility.

5.    **Level V** is the security level for Holman Unit Correctional Facility and St. Clair Correctional Facility.

6.    **Level VI** is the security level for Donaldson Correctional Facility.

Your security level may be restored when you have a progress review if something in your record such as length of time remaining on your sentence, number of disciplinaries or other such items has changed.

| Number 100 | INSTITUTIONAL LIVING |
|---|---|

You have certain responsibilities while in the institution to other inmates and to yourself. You have the responsibility to carry out the program or jobs selected for you. You are expected to obey the rules and avoid getting involved in conflicts or fights with anyone. Your willingness to follow institutional regulations, to get along with other inmates and employees, and to satisfactorily perform your assigned duties are ways to show your readiness to return to society. The Parole Board usually takes such factors into consideration when reviewing your case for parole.

You are expected to keep your dormitory or cell neat and clean by sweeping the floor, dusting the furniture and bars, and cleaning the walls. Your cell or bed space in the dormitory must also be neatly arranged and your bed made in accordance with the institutional standards.

This does not apply to work release inmates. Your personal items must be neatly arranged in the box provided for you. For your protection, this box should be kept locked. The toilet bowl and wash basin must be kept very clean. Since you are living with a large number of people in a small area, you are expected to refrain from making loud noises or talking in a loud voice. Your cell or dormitory will be inspected for cleanliness and general housekeeping. Any unauthorized items found in your possession will be considered contraband, and you will be held responsible for anything in your assigned living area.

| Number 101 | LIVING ASSIGNMENT |
|------------|-------------------|

The assignment of cells or dormitories, or any change of assignment may be made only by institutional officials. Your first assignment will be to a cell or to a specific dormitory bed. Assignment to a specific cell or dormitory is made on the basis of your prison record, physical condition, work assignment, and adjustment to prison life. Unauthorized change of cell or bed location may result in disciplinary action.

| Number 102 | PERSONAL APPEARANCE |
|---|---|

You are expected to maintain a good personal appearance. Male inmates are expected to be clean shaven and neat. Mustaches and beards are not permitted. There is opportunity for haircuts so you can keep your hair well-groomed. Barbers are instructed in regard to proper haircuts and are not permitted to give special haircuts. Sideburns may be worn medium length and extended no longer than the middle of the ear. Hair must be worn in proper style for health, identification, and security reasons.



**GROOMING GUIDELINES**

Regular haircut off neck and ears

Sideburns no lower than mid ear

Clean shaven

Shirt buttoned

KCF    123456

Shirt tucked in

Rules and regulations regarding the personal appearance of female prisoners will be recommended by the Warden of the female prison.

Neither male nor female inmates may change their hair color except to let it return to its natural color. Necessary toilet articles will be supplied at institutions other than work release so that you can maintain a neat and clean appearance.

| Number 103 | CLOTHING |
|---|---|

Your outer clothing will be exchanged on a regular basis as established in each institution. Clean shirts and trousers will be issued in exchange for your dirty ones. When your shoes need repairing or replacing, make your request to the supervisor on duty. All clothing is marked with indelible markings. When your job makes it necessary for you to wear special types of additional clothing, it will be marked and assigned to you.

Care and caution are necessary in the wearing and use of clothing issued to you by the institution. You cannot mutilate, mark or disfigure state-issued clothing, nor make any alterations to these clothes. Careless or malicious destruction of clothing will not be permitted. You are not permitted to receive or wear any article of clothing not issued to you by The Department of Corrections except in the work release program. The only exceptions the to this rule are items received in approved packages and items purchased through the canteen.

You are permitted to have in your possession and/or wear only the jewelry listed as long as their dollar value does not exceed the imposed limit. Descriptions of the items of jewelry and their value must be recorded in your institutional record.

1.    A watch not to exceed $25.00 value.

2.    A wedding band, not to exceed $50.00 value.

3.    A religious item, restricted to a necklaces only, not to exceed $25.00 value.

4.    Two pair of earrings, females inmates only, not to exceed total value of $25.00.

| Number 104 | **DINING HALL** |
|---|---|

You are expected to conduct yourself in an orderly fashion in the dining hall. You are also expected to dress neatly and correctly when coming to meals. The Department of Corrections serves the same meal at all institutions. You will be served an approved diet.

| Number 105 | **VISITATION** |
|---|---|

Visitors may include your immediate family such as parents, grandparents, brothers, sisters, all children, your wife (if you are married), and one friend of the same sex. If not married, you may list one friend of the opposite sex. Only two friends can be listed. All must be 19 years of age or older to be listed.

The Warden, at his discretion, may authorize special visits by persons whose names do not appear on the inmate's authorized visitor list. You are normally permitted to have eight adults on your list of visitors, and this list must be approved by the Warden. Not more than four adults are permitted to visit you on each occasion. Children must be accompanied by a responsible adult. Visiting privileges will be canceled when they are abused. Visiting privileges in the Department of Corrections are considered to be lenient, and you should make every effort not to abuse your visiting privileges. The Warden of your institution may deny visitation by individuals who have a criminal history or who have been known to cause problems in the past.

Visiting privileges differ among institutions due to the different physical facilities available. Visiting privileges will be explained to you at the institution to which you are assigned. If for any reason it becomes necessary to remove you from the regular population, anyone desiring to visit you must contact the Warden and determine what your visiting days are, if any. Inmates who abuse their visitation privileges by using it as a means of introducing contraband into the institution, or by inappropriate conduct during visiting, will lose their visiting privileges with the visitor or visitors involved.

Each visitor must submit to a proper search of his or her person and belongings. Upon entering prison grounds, visitors and the vehicle in which they are riding are subject to being searched.

| Number 106 | **CORRESPONDENCE** |
|---|---|

In all of the main institutions there are two mail boxes: one is for U.S. mail requiring postage, and the other is for handmail to officials of the institution. Handmail does not require postage. There are no limits to the number of letters sent or received.

Mail between inmates will normally not be allowed. Exception will be considered when an inmate can show that he or she has a relative at another institution; and then only when a close, personal or positive relationship exist between the two inmates. If both Wardens agree, then and only then, will the inmates be allowed the privilege of corresponding with one another. This mail will be marked as instructed and will be censored. Other mail will be checked only for contraband.

Both outgoing and incoming mail, including legal mail, may be inspected for contraband and/or for abuses of mail privileges. Legal mail is considered to be any mail between an inmate and any public official, agency or lawyer. This includes letters from attorneys, courts, judges, federal and state court clerks, elected officials, and government agencies. Legal mail will be opened in the presence of the inmate.

You must submit a list of people who will send you money. The funds list must be approved by the Warden. You can, but are not restricted to, have the same individuals on the funds list as those listed on your visitation list.

| Number 107 | PACKAGES AND MONEY |
|------------|--------------------|

The only package you will be permitted to receive will be the Christmas package and incentive package.

The only money orders that will be accepted for credit to your account are U.S. Postal Money Orders, cashiers checks, or money orders issued by companies licensed to sell money orders by the State of Alabama Securities Commission. The money orders must be from someone on your approved funds list. The business manager will be glad to help you when you have a question about receiving money. If you are under court order to make restitution to victims or to pay court cost, you are required to do so. Any money remaining in your account at the time of your release will be given to you at that time.

Inmates, except those in work release centers, Farquhar Cattle Ranch, the PDL and SIR programs, are not allowed to have money in their possession. An inmate found with money in their possession will receive disciplinary action for possession of contraband, or for violating institutional rules.

| Number 108 | CHECKING OF MAIL AND PACKAGES |
|---|---|

The Department's policy of examining mail and packages is in compliance with pertinent court orders affecting the Department while giving you as much privacy as can be given to you as an individual. The Warden of the prison you are assigned to has the authority to order examination of your mail or packages to the extent that is necessary to protect institutional security. Official mail is subject to verification. Mail to and from public officials or an attorney at law licensed to practice in the State of Alabama will not be opened except in the presence of the inmate addressed.

| Number 109 | CANTEEN |
|------------|---------|

Each institution has a canteen where you may purchase selected small items. Prices of each item will be posted. You may visit the canteen only at the times designated. You can only purchase items when you have money in your Prisoner's Money On Deposit (PMOD) account. The amount of your purchases will be subtracted from your PMOD balance. You will be provided with a copy of the transaction. Any abuse of canteen privileges may result in disciplinary action and/or in the loss of store privileges.

| Number 110 | TRADING, GAMBLING AND BARTERING |
|---|---|

You are not allowed to trade, barter, sell or exchange personal property. You may take only those items with you upon your release for which there is proof of ownership on record.

| Number 111 | **RECREATION** |
|---|---|

The Recreational Service Officer is responsible for providing a recreation program which is available to all who want to participate and who are not otherwise restricted.  At the Wardens discretion, and under certain conditions, outside teams are permitted to visit the prisons and compete in activities.

| Number 112 | LAW LIBRARY |
|---|---|

The Law Library is for your use.  You will be provided reasonable access to the  Library during the posted hours of operation.  It is open at least 20 hours per week.  A person familiar with the library will be on duty to help you find material you need.

As long as you are assigned to general population you will be able to use the library in your free time.  When you are placed in segregation due to a disciplinary you may still have necessary law books but you will be restricted as to how long and how many books you may have.  You will be charged with a disciplinary when you damage, lose, or steal a law book.

| Number 113 | **RELIGION** |
|---|---|

The Chaplain assigned to the main institution, or a free-world volunteer clergyman, will contact you to discuss your religious life while you are in the institution. The Chaplain will be a contact between you and the denomination of your choice. He will talk with you during off-work hours and during church hours. Legitimate clergyman and representatives of recognized religious are permitted to visit the institution after proper coordination with the Chaplain. You are encouraged to participate in the religious activities of your institution.

| Number 115 | EDUCATIONAL/VOCATIONAL TRAINING |
|------------|--------------------------------|

You have an opportunity to improve yourself by developing vocational skills and/or furthering your education. Educational and vocational training programs are provided by the Alabama Department of Education at or near most institutions. If you decide to use this opportunity, you need to see your classification specialist for further coordination.

| Number 114 | MEDICAL TREATMENT |
|------------|-------------------|

Adequate medical treatment is available on a daily basis. At all major institutions, a physician will provide needed medical services. A nurse will pre-screen your symptoms before making a referral to the physician. Physicians are on call at smaller sized institutions. You will be told the time and place to report for sick call. Dentists are also employed to provide routine dental treatment. When surgery or special treatment is required, you will be transferred to a hospital.

If you become ill on the job, or while you are in a cell or dorm, you should tell your immediate supervisor who will see that medical treatment is provided.

When you are assigned to a work release center, you may use a free-world physician or dentist of your choice at your own expense. In the event you want the Department to provide medical services to you, your Director must get approval from the Medical Contractor prior to treatment, except in emergency situations.

When on the SIR Program, you are required to be responsible for your own medical expenses. If you should have medical problems that cost more than your medical insurance will cover, or that you can pay, you must contact your SIR supervisor at once.

| Number 200 | LEAVE AND PASS PROGRAM |
|------------|------------------------|

The leave and pass program is only available for certain eligible inmates. To be one of these inmates, you must have a record that demonstrates you are a responsible individual who is worthy of the trust and special consideration that goes with earning this privilege. When you request a leave or a pass, your entire record will be closely checked. If you are granted a pass, a leave, an emergency leave, or a pre-release discretionary leave, it will be under very restrictive conditions. In the event you have a high custody level, or if you were found guilty of committing certain violent crimes, or if your presence in the community would be objectionable to the public, the chances are strong that you will not be granted any sort of leave or pass. If, on the other hand, you are not excluded by any of the above restrictions, or any other restrictions imposed, and when you have demonstrated yourself to be deserving, you may be granted an approved absence after you become eligible.

**Passes** are granted for a period of up to eight hours, usually on a Sunday. When granted a pass, you are prohibited from traveling beyond a 30 mile radius of your institution.

**Leaves** are granted for a period of up to three days. You will be permitted to travel to a specified and approved area within the State of Alabama where you must remain except for traveling to and from the institution.

**Emergency leave** may be granted when there is a death or serious illness in your family. Depending upon your custody level, you may be required to be escorted by armed Correctional Officers, and when this is the case, you will be required to pay

their expenses.

**Pre-release discretionary leave (PDL)** may be granted to provide you with an opportunity to seek employment of a seasonal or timely nature, to attend an approved college that starts prior to your EOS, and/or for finding a suitable place to live. Among other restrictions, pre-release discretionary leave is granted only when you are within one hundred eighty (180) days of the expiration of your sentence.

| Number 300 | WORK RELEASE PROGRAM |
|---|---|

The work release program allows for selected inmates to be placed in community-based facilities which are located in areas of potential employment throughout the state. Your classification specialist will explain to you how you can qualify for the Work Release Program.

When you are assigned to work release, you will work in a free world job earning regular wages and return after work hours to the work release center. From your earned wages, ~~32.5%~~ 40 of your gross will be paid to the Department to help defray the cost of maintaining you in the community program. State and federal income tax, and Social Security will also be deducted from your gross pay check. The remainder of your wages is deposited to your PMOD account. From this net money, you will also pay for your transportation to and from work. Further, you must also pay restitution, court costs, or child support when the court has ordered this condition. Also when you have money in your PMOD account, you may send money home to help your family.

When you first arrive at a work release center, as a general rule you will be given a job assignment working on the center's inmate staff. Until you are actually placed in a paying job in the free world, you will not be considered on work release. In the event that a public protest is received in regards to you being assigned to a community-based facility, and if the protest is honored by the Department, you may be returned to a more restrictive Level II facility or to an institution at your previous security level.

| Number 301 | SUPERVISED INTENSIVE RESTITUTION |
|---|---|

The Supervised Intensive Restitution (SIR) program allows selected inmates to return to their community under the strict supervision of SIR officers. If you qualify for this program you are required to have an approved sponsor. You will provide your own room and board, and you must be gainfully employed or involved in community service work. If you are under a court order to make restitution to victims or to pay court costs, you are required to do so when participating in this program.

For the selection criteria of the SIR program, see your classification specialist. In the event that the public protests to your placement on SIR, you may have to be returned to a more restrictive Level I or II facility, or to one at the security level where you were previously housed.

| Number  400 | GOOD TIME DEDUCTIONS FROM SENTENCE |
|---|---|

The Correctional Incentive Time (CIT) law allows certain inmates to earn bonus good time deductions from the length of their sentences.  If you were convicted of committing a crime on or after May 19, 1980, and depending upon your good behavior, the length of your sentence, and your good time earning status, you may be able to earn as much as 75 days credit for each thirty days actually served.

Contact your Classification Specialist to learn whether or not you can earn time and how it is awarded.

A time sheet was issued to you directly from the Department's Information Systems.  The CIT good time was computed and shown on your time sheet *as if you will continue* through the various CIT classes to the end of your sentence.  Unless you lose good time for some reason, your minimum release date will not change from the one shown on your original time sheet.  It is important that you retain your original time sheet.  Your minimum release date can change if you lose good time through disciplinary action, or you get another sentence which affects your time sheet, or you have good time restored.

| Number 401 | PAROLE |
|------------|--------|

Inmates who are eligible for parole will be considered on an individual basis. If you committed an offense on or after May 19, 1980, you will be scheduled for an initial parole review on the basis of guidelines used by the Parole Board. The guidelines take into account your prior criminal record, the seriousness of the current offense you are serving, and other important factors from your background. Whether you are ready or not for parole at the time of your parole review is a decision made only by the Parole Board, not the Department. The Board, or an agent thereof, will interview you before making their decision about your parole status.

The Parole Board will also review your prison record, which includes your behavioral conduct, the work reports from your supervisor, program participation, and self improvement efforts you may have made. They will also review all other information that is available to include your current offense and the circumstances leading up to it, your free-world job history, level of education, family background, and anything else which will give them an indication as to whether you may be successful on parole.

The Parole Board does not have the power to retry your case. It is concerned only with your parole eligibility based on your adjustment to prison and on your potential to successfully complete a parole. After reviewing your case, the Parole Board, will either grant or deny you parole. When parole is denied, you will either be given a new review date to reappear before the Board again, or you will be

required to serve the remainder of your sentence.

The Parole Board will be interested in your attitude, with how well you adjusted to the rules and regulations, with how well you have gotten along with the prison authorities and with other inmates, and with how well you have participated in programs the Department have established for you to help yourself. A good record in the Department will not guarantee you getting a parole, but it will certainly help.

| Number 500 | CONDUCT REPORTS |
|---|---|

All correctional officers and prison employees are responsible for inmate discipline. They have a duty to report any inmate seen violating statute, or a rule or regulation contained within this handbook. In the commit such a violation, the circumstance of the infractions will be described in a written disciplinary report which will be given to a disciplinary hearing officer who will schedule your disciplinary hearing.

Most members of the Department's staff are not generally interested in looking for reasons to give you a disciplinary. They feel better when you act in ways that do not require a disciplinary. Contrary to what some inmates will tell you, it is a fact that the majority of all inmates will leave prison without having had a disciplinary report. You too, can do this.

The inmate rules are simple, clear and easy to understand. The same rules also apply to your successful reintegration into the free-world. In the event your behavior justifies you receiving a disciplinary for a serious rule violation, or you receive a number of minor reports, it will be in your best interest to consider the beliefs, attitudes, and behaviors that you have which are causing you difficulty in adjusting. While trying to figure out why you are having difficulty, you may want to consult a member of the staff for helpful advice, particularly if you are constantly getting into trouble. Assistance from the staff, along with your personal desire to improve, can prevent many difficulties from happening again.

Regardless of where you are, or what you are doing, be certain that you obey

any order given to you by an officer or an employee even though it may differ from a previously given order. Always follow the last order given to you. Do not question the order, and do not try to explain the contradiction in orders.

| Number 501 | SCHEDULE OF RULE VIOLATIONS |
|---|---|

| Rule # | Type of Violation | Definition |
|---|---|---|
| 1--27. | No longer in use. | |
| 28. | Homicide. | The death of a human being caused by another person's actions. **A major violation.** |
| 29. | Assault on a person(s) associated with the Dept of Corrections. | Any willful attempt or threat to inflict injury upon an officer of the Dept, or an employee or other person associated with the Dept, giving the victim reason to fear or expect immediate bodily harm. **A major violation.** |
| 30. | Assaulting other person(s) not associated with the Dept of Corrections. | Any willful attempt or threat to inflict injury upon other person(s) not associated with the Dept of Corrections giving the victim reason to fear or expect bodily harm. **A major violation.** |
| 31. | Assault on another inmate. | Any willful attempt or threat to inflict injury upon another inmate giving the victim reason to fear or expect immediate bodily harm. **A major violation.** |
| 32. | Seizing or holding hostages in any manner. | Abducting any individual in the intent to hold him for ransom or reward, to use him as a shield, or to use him as an aid in the commission of a falony or escape. **A major violation.** |

| 33. | Unlawfully detaining any person. | Holding any person against his will, even though the intent to create a hostage situation was not present. **A major violation.** |
|---|---|---|
| 34. | Fighting with a weapon. | Two or more individuals engaging in a mutual combat with a weapon(s) or a device(s) used as a weapon(s) during which combat the principal aggressor cannot be determined. **A major violation.** |
| 35. | Fighting without a weapon. | Two or more individuals engaging in a mutual combat during which combat the principal aggressor cannot be determined. **A major violation.** |
| 36. | Sexual assault (forcible). | Assault with the intention to commit the crime of rape or other sexual offense. **A major violation.** |
| 37. | Sexual Offense (non-forcible). | Commission of any sexual act during which act both participants act willingly. **A major violation.** |
| 38. | Indecent exposure/exhibition. | Exposure to sight of the private parts of the body in lewd or indecent manner. **A major violation.** |
| 39. | Extortion or blackmail. | Demanding or attempting to demand or receiving money or anything of value in return for protection from others in order to avoid bodily harm, or under threat of any kind. **A major violation.** |

| 40. | Robbery. | The taking of property from another by the use of force, or the threat of the use of force with the intent to deprive that individual of the property. **A major violation.** |
| --- | --- | --- |
| 41. | Making false statement or charge to a DOC employee with intent to deceive the employee or to prejudice another person. | The speaking of slanderous, defamatory, or untrue words tending to prejudice another. **A major violation.** |
| 42. | Gathering around an employee in a threatening or intimidating manner. | Self-explanatory. **A major violation.** |
| 43. | Harassment. | To badger, bait, torment, or hound; also to intimidate another by unlawful coercion or duress. **A minor violation.** |
| 44. | Threats. | A communicated intent to do bodily harm to another individual or group by verbal or written expression. **A major violation.** |
| 45. | Escape by force. | The departure out of the of the custody of the Dept of Corrections or other legal agency by a lawfully detained inmate with the intent to avoid confinement by use of constraining power, compulsion, or force. **A major violation.** |
| 46. | Attempt to escape by force. | An endeavor to escape by force, resulting in recapture prior to leaving state custody or other controlling agency. **A major violation.** |

| 47. | Escape without force. | See #45 above, except that there is no use of constraining power, compulsion or force involved. **A major violation.** |
| 48. | Attempt to escape without force. | See #46 above, except that there is no use of constraining power, or force involved. **A major violation.** |
| 49. | Absent without leave. | Not returning from leave or pass within two hours of the designated time. **A major violation.** |
| 50. | Being in an unauthorized area. | Also includes being absent from assigned work area or place of employment and/or being absent from assigned quarters without permission. **A major violation.** |
| 51. | Unauthorized possession of an escape device. | Having in one's possession any device which could be used to attempt to effect an escape, such as, but not limited to, an instrument to pick a lock, a homemade key, a disguise, or a replica of a human being. **A major violation.** |
| 52. | Unauthorized possession of weapon or device which could be used as a weapon. | Any instrument which could be used in a violent manner such as a device with a pointed and/or sharpened end, or a homemade club, or any item which appears to be a weapon. **A major violation.** |
| 53. | Inciting to riot or rioting. | To incite a riot is to solicit or urge other persons by speech or actions to engage in conduct which would create a substantial risk to institutional security or public safety, whereas rioting is the action of two or more |

|     |                                                                      | people engaging in such behavior.  A **major violation.**                                                                                                                                            |
| --- | -------------------------------------------------------------------- | ---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
| 54. | Refusing to work or encouraging others to stop work.                 | Self-explanatory.  **A major violation.**                                                                                                                                                            |
| 55. | Unsatisfactory work.                                                 | Assigned work not performed due in a satisfactory manner due to carelessness, inattention to detail, or indifference.  **A minor violation.**                                                        |
| 56. | Failure to obey a direct order of a Dept of Corrections official.    | Not complying with an order issued by a DOC employee in the performance of duty.  **A major violation.**                                                                                             |
| 57. | Insubordination.                                                     | Any act, gesture, remark or statement which obviously reflects disrespect to lawful authority.  **A major violation.**                                                                               |
| 58. | Lying or giving false information or testimony to an employee.       | Making statements which are known to be untrue, especially to deceive an employee of the Dept of Corrections, such as lying to a disciplinary committee.  **A major violation.**                     |
| 59. | Delaying, hindering or interfering with an employee in performance of his duty. | Self-explanatory.  **A major violation.**                                                                                                                                                 |
| 60. | Bribery or attempted bribery.                                        | Offering or conferring upon a public servant anything of value with the intent to affect or influence official action, or receiving anything of value for such a purpose.  **A major violation.**    |
| 61. | Disrupting the count.                                                | Any action intended or which otherwise effects a miscount of inmates within the institution.  **A major violation.**                                                                                 |

| 62. | Intentionally creating a security, safety, or health hazard. | Creating a situation which could cause serious impairment to the operation of the institution, harm to individuals, or result in destruction of property. **A major violation.** |
|-----|---|---|
| 63. | Disorderly conduct | Any behavior that is contrary to institutional policy or regulation, and may tend to disturb the security of the institution. **A minor violation.** |
| 64. | Possession of contraband. | The possession of any item not issued to the inmate by a Department of Corrections employee, sold in the canteen store or approved by the director or warden, to include possession of U.S. Currency in amount greater than five dollars ($5.00). The possession of currency does not apply to ECS inmates. **A major violation.** |
| 65. | Possession of unauthorized or unprescribed intoxicants, or paraphernalia. Also consumption or use of, or under the influence of alcohol, narcotics, or other intoxicants. | To include anything used in the administration of drugs or for the manufacture of drugs; for example, a paper bag with traces of glue inside, or the ingredients to make home brew or an intoxicating substance, or storage by the inmate of any psychotropic medication unless a specific exception is made by the prescribing physician (the inmate must keep a copy of the physician's authorization with medication at all times). **A major violation.** |

| 66. | Unauthorized possession of U.S. currency. | To include coin or any other negotiable instruments in an amount of $5.00 or less. The possession of currency does not apply to ECS inmates. **A minor violation.** |
|---|---|---|
| 67. | Burglary. | Entering or remaining unlawfully in a building, dwelling or secured area within a building with the intent to commit a crime, for example, entering the canteen or mail room to steal. **A major violation.** |
| 68. | Theft, damage or destruction of another's personal property. | The taking of the property of another person without threat, force, or coercion, with the intent to permanently deprive the owner of the property. **A major violation.** |
| 69. | Destroying, disposing, altering, damaging or selling state property. | Self-explanatory. **A major violation.** |
| 70. | Unauthorized possession of others property. | Having in one's possession items such as clothing, belonging to another, for example, the wearing of another inmate's jacket, with the other's identification number thereon, resulting in a security threat. **A minor violation.** |
| 71. | Arson. | The malicious burning, either by fire or explosion, of state property or items belonging to another inmate or person. **A major violation.** |
| 72. | Forgery. | The altering, possession, or transfer of a written instrument or document with the intent to defraud or deceive. **A** |

| | | major violation. |
|---|---|---|
| 73. | Counterfeiting. | To copy or imitate, without authority, in order to deceive or defraud by passing the copy as the original; for example, altering postage stamps, money orders or other documents. **A major violation.** |
| 74. | Gambling. | Conduct in which a person stakes or risks something value based upon the outcome of a contest of chance or the possession of equipment or paraphernalia used in said contest, or the operation of such a contest. **A minor violation.** |
| 75. | Violation of institutional mail rules. | The specific definition of the charge depends upon the mail rules. **A minor violation.** |
| 76. | Corresponding with another inmate without permission. | Self-explanatory. **A minor violation.** |
| 77. | Violation of visiting procedures. | The specific charge depends upon the visiting procedures the particular institution at which the violation occurs. **A minor violation.** |
| 78. | Failure to comply with the agreement and conditions of leave or pass. | To include travel arrangements of the of leave or pass plan. **A major violation.** |
| 79. | Unauthorized operation of a vehicle. | To include the operation of a state vehicle in an unauthorized area. **A major violation.** |
| 80. | Unauthorized use of institutional resources. | The use of institutional or departmental supplies, tools, equipment, or machinery without permission. **A minor violation.** |

| 81. | Feigning illness. | Self-explanatory. **A minor violation.** |
|---|---|---|
| 82. | Marrying without permission. | Self-explanatory. **A minor violation.** |
| 83. | Charging or accepting any compensation for legal assistance or other services rendered. | Aiding another inmate with administrative matter or other services rendered, such as disciplinaries, classification proceedings, and related appeals for compensation. **A minor violation.** |
| 84. | Unauthorized use of telephone. | The specific definition of the charge depends upon the nature of the institutional rules or regulations. **A minor violation.** |
| 85. | Violation of institutional rules or regulations. | The specific definition of the charge depends upon the nature of the institutional rules or regulations. **A minor violation.** |
| 86. | Being fired from a job. | Being released from employment because of sloppy work, insolent language, or other culpable behavior on the part of an inmate. **A major violation.** |
| 87. | Malingering. | To pretend to be ill or injured to avoid duty or work. **A major violation.** |
| 88. | Violation of Dept of Corrections= grooming and hygiene policy. | Self-explanatory. **A minor violation.** |
| 89. | Violation of Dept of Corrections= clothing policy. | To include unauthorized wearing and possession of jewelry. **A minor violation.** |
| 90. | Consumption or use of, or under the influence of alcohol, narcotics or other | The use of unauthorized narcotic substance or other intoxicant by sniffing, injecting, or orally ingesting. |

| | intoxicants. | **A major violation.** |
|---|---|---|
| 91. | Conspiracy to commit a violation of Departmental or institutional rules. | A combination or confederacy between two or more inmates for the purpose of violating some departmental or institutional rule, even though the act is not consummated or carried out. **Severity of penalty as major or minor will depend upon nature of the offense.** |
| 92. | Aiding and abetting another to commit a violation of Departmental or institutional rules. | To help, assist, or facilitate the violation of a departmental or institutional rule by encouragement or counsel as to its commission with words, acts, support, presence, or assistance rendered. **Severity of penalty as major or minor will depend upon nature of the offense.** |
| 93. | Violation of State or Federal statutes. | Self-explanatory. **A major violation.** |
| 94 | Soliciting a sexual act. | Self-explanatory. **A minor violation.** |
| 95. | Possession of any gang paraphernalia, drawing, or graffiti. | Self-explanatory. **A minor violation.** |
| 96. | Failure to report. | Self-explanatory. **A minor violation.** |
| | | |

E1 through W3 are additional rules applicable to inmates assigned to the External Correctional Service, Work Release and Supervised Intensive Restitution Program.

| E1 | Failure to pay fees. | Self-explanatory. **A major violation.** |
|---|---|---|
| E2 | Curfew violation. | Self-explanatory. **A major violation.** |

| E3 | Changing sponsor, residence or employment without supervisor's approval. | Self-explanatory. **A major violation.** |
|----|---|---|
| E4 | Failure to report to work, paid employment or community service. | Self-explanatory. **A minor violation.** |
| E5 | Being intoxicated or drinking alcoholic beverages. | Includes patronizing establishments where alcoholic beverages are primarily dispensed. **A major violation.** |
| E6 | Being arrested and convicted of a misdemeanor. | Self-explanatory. **A major violation.** |
| E7 | Being arrested and convicted of a felony. | Self-explanatory. **A major violation.** |
| E8 | Violation of SIR contract. | Self-explanatory. **A major violation.** |
| E9 | Absconding from supervision or absent without authority. | Self-explanatory. **A major violation.** |
| W1 | Associating with persons, of questionable reputation, ex-felons or known felons. | Self-explanatory. **A minor violation.** |
| W2 | Failure to seek drug or alcohol treatment when ordered by the supervisor. | Self-explanatory. **A minor violation.** |
| W3 | Possession of a firearm. | Self-explanatory. **A major violation.** |

| Number 502 | AUTHORIZED PUNISHMENTS FOR MINOR VIOLATIONS |
|---|---|

When you are convicted of a minor violations, you will not lose any good time. You will be afforded due process and be notified of the charge, when the hearing will be held, and the results of the hearing. Loss of privileges may include any combination of the sanctions below, but are not limited to :

1. Loss of visiting privileges for a maximum of 30 days.
2. Loss of store privileges for a maximum of 30 days.
3. Loss of pass and leave privileges for a maximum of six months.
4. Loss of television, radio, or movie privileges, or any combination thereof, for a maximum of 30 days.
5. Loss of telephone privileges (except for emergencies) for a maximum of 30 days.
6. Extra duty not to exceed three hours per day for a maximum of 30 days.
7. More restrictive custody status.

| Number 503 | AUTHORIZED PUNISHMENTS FOR MAJOR VIOLATIONS |
|---|---|

When you are convicted of a major violation, you can be given any punishment authorized for minor violations plus:

1.  The loss of all earned good time.

2.  The loss of pass/leave privileges for an indefinite period.

3.  Assigned to disciplinary segregation up to forty-five days.

4.  Be restricted from earning future good time.

| Number 504 | INSTITUTIONAL DISCIPLINARY PROCEDURE |
|---|---|

Each facility has a Disciplinary Hearing Officer who hears the charge(s) alleging a violation of the institutional rules and regulations occurred for which penalties will be imposed. The Disciplinary Hearing Officer will ensure that each disciplinary hearing complies with due process requirements.

In the event you are charged with a rule violation, you will be given at least twenty-four (24) hours advance written notice of the charges being brought against you. You will have the opportunity to call no more than three witnesses and to present evidence in your behalf. If you are unable to read, or when the issues are so complex that is unlikely that you can prepare an adequate case, an on-duty staff member may be assigned to help you. The hearing officer will not permit you to confront or cross-examine witnesses, nor will you have a constitutional right to free world counsel.

All disciplinary hearings will be held within ten calendar days after you have been served with the notice of hearing unless you are served with a notice of an extension.

After the disciplinary hearing has been completed, the Warden or Director must approve or disapprove the recommended action by the Disciplinary Hearing Officer within ten calendar, unless extended by the Warden/Director for further investigation. When this occurs, you will be notified in writing. The Warden/Director may approve a lesser authorized punishment than that recommended, but in no case may the punishment be increased over what was recommended. The Warden/Director will not challenge a NOT GUILTY finding by the Disciplinary Hearing Officer.

| Number 505 | SEGREGATION REVIEW BOARD |
|---|---|

There are two types of boards to review inmates in segregation.  One is the Institutional Segregation Review Board who will review an inmate in segregation at least every seven days.  The other is the Departmental Segregation Review Board who will review an inmate at least every sixty days.

The **Institutional Segregation Review Board** will review the files of an inmate in segregation, and may question the inmate personally.  The Board has the authority to release an inmate from segregation back to general population as long as it is in line with the disciplinary sentence.  At least three members of the board will be present at each meeting.

The **Departmental Segregation Review Board** has the authority to release an inmate from segregation at any time, or to authorize the transfer of the inmate to another institution in population or segregation status.  The Board will also review all inmates in segregation to determine that the punishment was proper and just.  An inmate serving disciplinary segregation time or loss of privileges may receive additional segregation time or loss of privileges.

| Number 600 | **DISCHARGE** |
|------------|---------------|

Upon the completion of your sentence, you *must be discharged* from the penitentiary. In the event you do not have suitable free-world clothing available at the time of your discharge, you will be furnished clothes. When you do not have transportation available, you will be provided with the least expensive kind of public transportation back to the point of sentencing, or if paroled, to the point to which you will have to report for parole supervision. In the event you are charged with the commission of any other criminal offenses resulting in a hold or detainer, you must be delivered to the proper sheriff or officer to answer to such charges.

Additionally, if your sentence did not exceed five years, you will be paid ten dollars ($10.00) in cash. If your term exceeded five years, you will be paid the ten dollars ($10.00) plus two dollars ($2.00) for each year (or fractional part of year not less than six months) served over the five years. The discharge allowance is authorized only one time for an offense. For discharge purposes only, an offense includes all of the cases under which you were incarcerated. If you are reincarcerated as a result of a parole violation after having received this allowance, you will not eligible for the same allowances upon your next release. Any or all of the allowances described above may be waived if you so desire.

State law requires each inmate released to register with the sheriff's office and/or police department in the county to which he/she returns.

| Number 700 | ALABAMA VOLUNTEERS IN CORRECTIONS (AVIC) |
|---|---|

AVIC is a non-profit corporation formed with the backing of the Department of Corrections. It consists almost entirely of Volunteers from community at some institutions or facilities. The main purpose of AVIC is to give you the best possible chance to make it in the free world once you are released.

The kinds of services provided by volunteers include, but are not limited to the following:

1. **SPONSORS** are one-to-one volunteers who may work directly with inmates making personal contact of not more than once a week and at least twice per month. Sponsors may sign inmates out on pass or leave to visit family, attend church or leisure trips when approved by appropriate authority. Sponsors often help to locate housing and employment when inmates become eligible for release.

2. **FRIENDS** are volunteers who write or visit long term inmates.

3. **GROUPS** consists of members of churches, clubs, etc., who join for the purpose of performing specific projects in correctional.

4. **SPECIALIST** are members of the professional community, i.e., legal, medical, psychological, etc., who provide limited services in that particular areas to the offender who is unable to pay and his family.

5. **ADVOCATES** do not work directly with inmates, but become acquainted with corrections and its needs in order to encourage public support and legislative

action to improve the effectiveness of corrections.

You may contact AVIC through your institutional coordinator or by writing to Alabama Volunteers in Corrections, (1400 Lloyd Street, Montgomery, AL 36130.) Volunteers prefer to initiate contact when you are within six (6) months of parole or release. AVIC may be able to provide help finding you housing or employment.

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THOMAS OTTER ADAMS, #100612          )
    Plaintiff,                                )
                                             )
    VS.                                       )
                                             )    CASE NO. 2:06-CV-959-WKW
                                             )
CARTER F. DAVENPORT, WARDEN II, et al    )
    Defendant (s)                              )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared <u>Lewis Huett</u>, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is <u>Lewis Hulett</u>, and I am presently employed as <u>Correctional Officer II</u>, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

I have not violated Inmate Thomas Adams' #100612, first amendment rights. Inmate Adams was instructed to get a haircut by Warden Carter F. Davenport.

All inmates in the Segregation Unit will maintain a haircut in accordance with ADOC procedures. Inmates that are assigned to the Segregation Unit are issued hygiene items as needed.

I have not violated any of Inmate Adams' Constitutional Rights.

                                             LEWIS HULETT

SWORN TO AND SUBSCRIBED TO before me this the ___19th___ day of
___December___, 2006.

                                        Linda E. Deal
                                        NOTARY PUBLIC

My Commission Expires: ___7-15-07___

EXHIBIT
2
PENGAD-Bayonne,N.J.

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THOMAS OTTER ADAMS, #100612     )
     Plaintiff,                    )
                                )
VS.                          )
                                )     CASE NO. 2:06-CV-959-WKW
                                )
CARTER F. DAVENPORT, WARDEN II, et al     )
     Defendant (s)                )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Anthony Askew, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Anthony Askew, and I am presently employed as Correctional Chaplain, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

As to the plaintiff's complaint of his First Amendment rights being violated, I have no knowledge of the plaintiff's rights being violated, for I was not present during the incident in which he alleges his hair was cut. This matter is outside the scope of my vocational jurisdiction because security concerns of the prison take precedence over religious matters.

In response to the plaintiffs complaint that I mumbled "some derogatory comment", I categorically deny making any derogatory comments about the plaintiff or any other inmate.

I have not violated any of Inmate Adams' Constitutional Rights.

ANTHONY ASKEW

SWORN TO AND SUBSCRIBED TO before me this the ___18th___ day of
___December___, 2006.

Linda E. Teal
NOTARY PUBLIC

My Commission Expires: ___7-15-07___

EXHIBIT
3

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THOMAS OTTER ADAMS, #100612    )
    Plaintiff,    )
        )
VS.    )
        )    CASE NO. 2:06-CV-959-WKW
        )
CARTER F. DAVENPORT, WARDEN II, et    )
    Defendant (s)    )

### AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Brian Mitchell, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Brian Mitchell, and I am presently employed as Psychological Associate II, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On October 11, 2006, I attended the Segregation Board at Easterling Correctional Facility. Inmate Adams, Thomas AIS# 100612 came before the Board and was ordered by Warden Davenport to get a hair cut. Inmate Adams stated that a hair cut was against his religion.

I deny violating any constitutional rights of Inmate Adams.

_Brian Mitchell_
BRIAN MITCHELL

SWORN TO AND SUBSCRIBED TO before me this the _14th_ day of
_December_ , 2006.

_Charlotte Wilson_
NOTARY PUBLIC

My Commission Expires: My Commission Expires Jan. 24, 2009



EXHIBIT
4

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THOMAS OTTER ADAMS, #100612     )
     Plaintiff,     )
     )
VS.     )
     )     CASE NO. 2:06-CV-959-WKW
     )
CARTER F. DAVENPORT, WARDEN II, et     )
     Defendant (s)     )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Mitchell Borders, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Mitchell Borders, and I am presently employed as Correctional Officer I, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On October 17, 2006, I Officer Mitchell Borders was assigned as Segregation Officer. As the Segregation Officer, I was responsible for the safe and orderly management of the Segregation Unit and the proper conduct of the inmates held there. Haircuts of the Segregation Unit are the responsibility of third shift. Inmates in Segregation will maintain a haircut in accordance with departmental rules. Haircuts will be done at least once every two weeks or sooner if needed. Officer Kim Richardson and myself began haircuts for Disciplinary Segregation inmates. We received instructions to give Inmate Thomas Adams a haircut. Officer Richardson and myself approached Inmate Adams' cell and instructed him that he needed to receive a haircut. Inmate Adams was escorted to the Segregation Lobby where he received a haircut from the Segregation Institutional Barber. After the haircut was completed Officer Richardson and myself escorted Inmate Adams back to his assigned cell.

I deny violating any constitutional rights of Inmate Adams.

_Mitchell Borders_ AOI
MITCHELL BORDERS

EXHIBIT
5

Affidavit – Mitchell Borders
Civil Action – 2:06-CV-959-WKW
Page 2


SWORN TO AND SUBSCRIBED TO before me this the _____14_____ day of
_____Dec._____, 2006.                    _Annie R McLeod_
                                             NOTARY PUBLIC

My Commission Expires:   _2 - 14-2010_

Annie Ruth McLeod
Notary Public State of AL
My Comm. Expires 2-14-2010

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THOMAS OTTER ADAMS, #100612 )
    Plaintiff, )
)
VS. )
)    CASE NO. 2:06-CV-959-WKW
)
CARTER F. DAVENPORT, WARDEN II, et al. )
    Defendant (s) )

### AFFIDAVIT

    Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared <u>Kim Richardson</u>, who being known to me and being by me duly sworn, deposes and says under oath as follows:

    My name is <u>Kim Richardson,</u> and I am presently employed as <u>Correctional Officer I</u>, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

    On October 17, 2006, I, Officer Kim Richardson was assigned to the Segregation Unit. Officer Richardson was informed by Second Shift that anybody's name on the haircut list must get a haircut. Inmate Thomas Otter Adams, W/100612 was one of the inmate names on the list. Officer Richardson and Officer Mitchell Borders went to Inmate Adams' cell 5A-18 and instructed Inmate Adams to get ready to get a haircut. Inmate Adams complied. Inmate Adams was escorted to the Lobby. Inmate Adams was given a regulation haircut. Officer Richardson and Officer Borders returned Inmate Adams back to his assigned cell.

    I have not violated any of Inmate Adams' constitutional rights.

                       _Kim Richardson_
                       KIM RICHARDSON

SWORN TO AND SUBSCRIBED TO before me this the ___19th___ day of
___December___, 2006.
                       _Linda E. Teal_
                    NOTARY PUBLIC

My Commission Expires: ___7-15-07___



EXHIBIT
6

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THOMAS OTTER ADAMS, #100612 )
    Plaintiff, )
     )
    VS. )
     )    CASE NO. 2:06-CV-959-WKW
     )
CARTER F. DAVENPORT, WARDEN II, et al )
    Defendant (s) )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Carter F. Davenport, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Carter F. Davenport, and I am presently employed as Warden II, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

## ADDENDUM TO PREVIOUS AFFIDAVIT

Inmate Adams' allegation that he has been assigned to the Segregation unit over 485 days is true. Inmate Thomas Adams #100612 was assigned to Admin. Segregation on June 21, 2005 for investigation for violation of rule #62 – Intentionally Creating a Security, Safety, or Health Hazard (Exhibit #1).

On July 14, 2005 Inmate Adams Semi-Annual Review was conducted, Inmate Adams was advised on his negative behavior for Rule Violation #64-Possession of Contraband, and pending Rule Violation 64-Possession of Contraband, on 6/05 (Exhibit #2).

On September 14, 2005 Inmate Adams received a 24-hour advance notification of Pending Reclassification (Exhibit #3).

On September 21, 2006 Inmate Adams was reclassed due to June 10, 2005, several ADOC, employees observed Inmate Adams publicly intimidating other inmates associated with the Native American Community. Because of this behavior, the safety of this inmate and the safety of other inmates cannot be guaranteed if Inmate Adams remains in Easterling's population.

EXHIBIT

7

Affidavit – Carter F. Davenport
Civil Action – 2:06-CV-959-WKW
Page 2

Since Inmate Adams reclass, he has received several disciplinaries while been assigned to the

Segregation Unit for his negative behavior. As to the present time Inmate Adams is pending disciplinary

actions for violation of Rule #64-Possession of Contraband.

I have not violated any of Inmate Adams' Constitutional Rights.

CARTER F. DAVENPORT

SWORN TO AND SUBSCRIBED TO before me this the ___19th___ day of
___December___, 2006.

NOTARY PUBLIC

My Commission Expires: __03|31|07.__

# EASTERLING CORRECTIONAL FACILITY
## P.O. BOX 10
## CLIO, AL 36017

## DETENTION NOTIFICATION

JUN 2 8 2005

TO INMATE: ___Thomas Adams___     Race: W/M    AIS#: ___100612___

This is to inform you that you are presently being investigated by:

___Captain Kenneth Sconyers___ for: ___Rule Violation #62 - Intentionally creating a security, safety,___
(Supervisor's name)            (Briefly describe reason for detention)
or health hazard. Per Warden Mosley. _____

_____

_____

_____

_____

As a result of this, you are being placed in a single cell, pending completion of the investigation or evaluation. You are hereby notified that this investigation or evaluation may take longer than 72 hours. Before the end of the 72-hour period, you either will receive additional notification, or be released from the single cell. The 72-hour period excludes weekends and holidays. By your signature below, you acknowledge receipt of a copy of this notice.

****CHECK APPROPRIATE BOXES BELOW TO INDICATE PLACEMENT/STATUS****
    (X)  Investigate for violation of rules/regulations.
    (  )  Pending investigation for Protective Custody.
    (  )  Pending reclassification.
    (  )  Suicide/Self Injury Watch.
    (  )  Hunger Strike.

___Mary A. Lee, COS I 4/21/05___     ___Thomas Adams 100612___
SHIFT SUPERVISOR'S SIGNATURE/DATE        INMATE'S SIGNATURE/AIS#

___Anthony Ellis COI___         ___6/21/05       1 07/pm___
SERVING OFFICER'S SIGNATURE        DATE AND TIME OF SERVICE

DISTRIBUTION:    Original to Segregation
                Deputy Warden
                Captain
                Classification Supervisor
                Inmate's File

## EASTERLING CORRECTIONAL FACILITY

### SEMI-ANNUAL REVIEW

_7/11/2005_

TO: _Adams, Thomas_     AIS: _100612_

FROM:  LATRICE GREENE, CLASSIFICATION SPECIALIST/SUPERVISOR

YOUR INSTITUTIONAL FILE HAS BEEN REVIEWED AND YOU HAVE BEEN RECOMMENDED FOR THE FOLLOWING ACTIONS:

_____RESTORATION OF _____ GOOD TIME.

NO CHANGE AT THE TIME DUE TO:

_____A.     RESTRICTED OFFENDER STATUS

_____B.     SEX OFFENDER STATUS

_____C.     NEGATIVE BEHAVIOR _RV #64 on 1/05 and pending_

_#64 on 6/05_ _____

_____

_____D.     RISK ASSESSMENT SCORE _____

_____E.     TIME TO SERVE

_____F.     LACK OF PROGRAM PARTICIPATION/COMPLETION _____

_____

_____G.     DETAINER _____

_____H.     OTHER _____

_____

THE CLASSIFICATION COMMITTEE WILL CONDUCT YOUR ANNUAL PROGRESS REVIEW ON _1/2006_ . YOUR PRESENCE IS REQUIRED, THEREFORE, ADVANCE NOTIFICATION WILL BE FURNISHED.

CC:  FILE

FORM 22

## 24 HOUR ADVANCE NOTIFICATION OF
## PENDING RECLASSIFICATION

TO: ADAMS, THOMAS R.     100612B                    W/M                    9/14/2005
         NAME                        AIS #                      R/S                      DATE

Notice of Reclassification: This is to inform you that on the 21____ day of  September_____ , 20 05___ , you will

meet a reclassification team to be considered for change in custody and/or institutional assignment because:
your safety and the safety of other inmates cannot be guaranteed at this time if you continue to remain in
Easterling's population. An example of such possible breech of inmate (s) protection  was exhibited on June 10,
2005 and  June 21, 2005,  when you were observed by several ADOC employee(s) publicly intimidating other
inmates associated with the Native American community.  As noted in the ADOC, Administrative Regulation
#433 sec. II/B-1, an inmate may be placed in Administrative  Segregation in the following types of circumstances:
"an inmate whose continued presence in the general population may pose a serious threat to self, other inmates, or
the security or orderly operation of the institution.  Therefore as a result of this hearing, your custody may be
increased to Medium/Administrative Segregation.

This is not a disciplinary hearing.  A reclassification team will review this matter and recommend changes, if
needed, in your current placement and/or custody.  At the reclassification meeting you will be given an
opportunity to be heard, to present witnesses and to present documentary evidence.

_Daron Fayson, CoI_                    _SEPT. 14, 2005_          _Noel Jun CoI_
NAME OF SERVING OFFICER               DATE                       WITNESS

I understand that this is my notice of a reclassification meeting to determine changes in placement and/or
custody.  I have been given the opportunity to call witnesses in my behalf and have received a copy of this
notice on  _SEPT. 14, 2005_____     at  ___9: 30  A M_____ .
                 DATE                                       TIME

                              _Thomas Adams_          _100612_
                              SIGNATURE OF INMATE           AIS #

WITNESSES REQUESTED BY INMATE:
_STEVEN MOGAN, HOYT CLINE, PAUL BROWN,_ _____           NONE
_JOHN STRONG_