IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THOMAS OTTER ADAMS, #100 612 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:06-CV-959-WKW |
| ) | (WO) |
| CARTER DAVENPORT, WARDEN II, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is pending before the court on a 42 U.S.C. § 1983 complaint filed by Thomas Adams, a state inmate, incarcerated at the Staton Correctional Facility located in Elmore, Alabama.[1] Plaintiff, a practitioner of Native American religion, contends that Defendants violated his First Amendment rights by requiring him to cut his hair against his religious beliefs and teachings. He further alleges that Defendants' conduct constitutes religious retaliation and discrimination against Native Americans. Plaintiff names as defendants Assistant Warden Carter Davenport, Chaplain Anthony Askew, and Correctional Officers Kim Richardson, Mitchell Borders, and Lewis Hulett. Plaintiff seeks punitive damages, a declaratory judgment, and trial by jury for the alleged violations of his constitutional rights. The Defendants have filed an answer, special report, and supporting evidentiary materials addressing Plaintiff's claims for relief. The court informed Plaintiff that

---

[1] When he filed the instant complaint, Plaintiff was incarcerated at the Easterling Correctional Facility located in Clio, Alabama.

Defendants' special report may, at any time, be treated as a motion for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment. Plaintiff filed a response to the special reports filed by Defendants. This case is now pending on the aforementioned motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and Plaintiff's opposition to Defendants' dispositive motion, the court concludes that Defendants' motion for summary judgment is due to be granted. For the sake of brevity, the court will dispense with a recitation of the well known standards which the court applies in considering a motion for summary judgment.

### A.  REQUEST FOR DECLARATORY RELIEF

Plaintiff is no longer incarcerated at the Easterling Correctional Facility. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated at Easterling, his request for declaratory and/or injunctive relief has been rendered moot.

### B.  CHALLENGE TO GROOMING POLICY[2]

**1.  First Amendment Challenge.**

Plaintiff requested an interview with the Segregation Review Board on October 11, 2006. Plaintiff wished to obtain an update regarding his custody status as well as inquire about his request for a transfer.  During the meeting Defendant Davenport observed Plaintiff's hair and advised him that he needed a haircut.  Plaintiff told Defendant Davenport that it was against his religious teachings and beliefs to cut his hair.  The meeting concluded and Plaintiff returned to his cell.  (*Doc. No. 1 at 4*.)

On October 17, 2006 Defendants Borden and Richardson advised Plaintiff that it was time for a haircut. Plaintiff reiterated that cutting his hair was against his religious beliefs. Nonetheless, Plaintiff complied with the guards' directive and proceeded to the lobby where he received a haircut from an inmate barber. (*Doc. No. 1 at 5*.)

Plaintiff practices Native American religion. He  asserts that allowing his hair to remain uncut is significant to his religious beliefs. As a Native American practitioner, Plaintiff believes that his hair absorbs as well as discharges energies which are spiritual by

---

[2] In his complaint, Plaintiff challenges the Alabama Department of Corrections' ["ADOC"] grooming policy as violative of his right to the free exercise of his religion.  That is, Plaintiff complains that, as a practitioner of Native American religion, the ADOC's grooming policy requiring him to cut his hair contrary to his beliefs deprives him of spiritual strength and physical wellness and creates a spiritual void. The complaint further alleges claims that the grooming policy reflects religious retaliation and discrimination by Defendants against inmates of the Native American faith. To the extent Plaintiff attempts to raise new theories of liability in his opposition,  the court rejects those attempts. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff many not amend h[is] complaint through argument in a brief opposing summary judgment."). Accordingly, the court's discussion is limited to addressing those claims specifically presented in the complaint. Plaintiff is free, however, to file another civil action if he wishes to do so.

nature and design. Plaintiff maintains that the ADOC's grooming policy violates his right to the free exercise of his religion under the First Amendment because it completely eliminates and desecrates the process of daily worship which causes a spiritual void, takes away a primary source of spiritual nourishment, and does away with his spiritual strength and physical wellness. (*Doc. No. 1 at 4-9*.) Defendants argue that requiring inmate adherence to the grooming policy does not result in the violation of an inmate's constitutional rights as the challenged policy advances the legitimate penological interests of promoting inmate health and hygiene and maintaining safety and security within the jail. (*Doc. No. 14, Exh. 1 and Attachment, Exh. 5*.)

In addition to this lawsuit, the Plaintiff is also a named plaintiff in *Limbaugh v. Thompson*, 2:93cv1404-WHA (M.D. Ala.). While *Limbaugh* arose in a different factual context, both that case and the instant case are challenges to the Alabama Department of Corrections' hair length policy. In *Limbaugh*, the court entered on March 8, 2012, a final judgment concluding that the Alabama Department of Corrections' hair length policies are not violative of Native American Religion inmates' statutory rights established under the Religious Land Use and Institutionalized Persons Act of 2000, ("RLUIPA"), 42 U.S.C. § 2000cc, et seq. In that case, the undersigned concluded in a Recommendation that "the ADOC's grooming regulations are the least restrictive means to further the compelling governmental interests in security and order in Alabama's overcrowded, understaffed and underfunded prisons." After considering the Plaintiffs' objections to that conclusion, the

court overruled the objections.

>The Plaintiffs complain that the Magistrate Judge incorrectly deferred to prison officials in a manner inconsistent with the Religious Land Use and Institutionalized persons Act of 2000 (RLUIPA) and *Gonzales v. O Centro Espirita Beneficente Uniao doVegetal*, 546 U.S. 418 (2006), in concluding that the Defendants carried their burden to demonstrate the existence of a compelling interest in requiring that inmates' hair be cut short. "The compelling interest standard-under both RLUIPA and the Constitution–is not one of deference but one of proof." (Pl. Objections at 4-5) Of course, the Defendants have a burden of proof on the compelling interest requirement, and the Recommendation fully discussed that. The Plaintiffs' reliance on Gonzales is misplaced. The question in that case was whether the Religious Freedom Restoration Act (RFRA) prohibited the government from applying the Controlled Substances Act to ban a religious sect's use of hoasca, a tea containing a hallucinogen, in religious ceremonies. The Court found, as did the courts below, that the government failed to meet its burden of proof to demonstrate a compelling interest. But Gonzales did not involve prisons, and the Plaintiffs ignore the fact that both RFRA and RLUIPA specifically require a court to defer to prison administrators in considering claims of prisoners.
>
>Much of the Plaintiffs' objections are devoted to a discussion of least restrictive alternatives and the fact that other prisons permit long hair. But, as noted in the Recommendation, context matters and what happens in other prison systems is beside the point. What the Plaintiffs want is that the court decouple deference from least restrictive alternative so that these are considered in isolation. That is inconsistent with RLUIPA.
>
>Much of the Plaintiffs' objections are devoted to a demonstration that other prisons have different regulations and that none of the Alabama Department of Corrections's officials' concerns are valid. For the reasons stated in the Recommendation, the fact that other prison officials handle these questions differently is not determinative.
>
>The Plaintiffs argue that the Alabama Department of Corrections' argument premised on lack of staff is "chutzpah." ((Pl. Objections at 49)  Put another way, the Plaintiffs argue that the Defendants' lack of ability and money is no reason to violate their rights under RLUIPA. Of course, lack of funding is not an excuse for a denial of rights, but here that is not the question. Rather, the question is whether the Defendants' hair regulations survive

>scrutiny under the RLUIPA tests. In applying those tests, the court must do so in a manner which takes into account the reality of Alabama prisons which are facts, not excuses. Those facts inform the answer to whether the regulation meets the compelling interest and least restrictive means requirements. The court agrees with the conclusion of the Magistrate Judge, based on the facts, that the Alabama Department of Corrections' regulations restricting inmate hair length do not violate the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, et seq.

Order, *Limbaugh v. Thompson*, 2:93cv1404-WHA (M.D. Ala. March 8, 2012).

In the instant case, the Plaintiff raises only a First Amendment challenge to the hair length regulations. However, "[i]f a prison regulation passes muster under RLUIPA . . . it will perforce satisfy the requirements of the First Amendment, since RLUIPA offers greater protection to religious exercise than the First Amendment offers." *Smith v. Allen*, 502 F.3d 1255, 1264 fn 5 (11th Cir. 2007). For these reasons, the court concludes that the Alabama Department of Corrections' hair length regulations are not violative of the Plaintiff's constitutional rights.

### 2. Equal Protection Challenge.

Plaintiff argues that implementation of a policy requiring short hair for inmates constitutes discrimination against inmate practitioners of the Native American faith in violation of the Fourteenth Amendment. This claim fails to implicate a violation of Plaintiff's constitutional rights.

In order to set forth a claim cognizable under the Equal Protection Clause, "a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally

protected interest such. *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986) (*per curiam*)." *Jones v. Ray*, 279 F.3d 944, 946-947 (11th Cir. 2001). Moreover, to establish an equal protection violation, a plaintiff must demonstrate the existence of intentional or purposeful discrimination. *Whitus v. Georgia*, 385 U.S. 545, 550 (1967); *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993); *E & T Realty v. Strickland*, 830 F.2d 1107, 1113-1114 (11th Cir. 1987); *Village of Arlington Heights v. Metro. Housing Development Corp.*, 429 U.S. 252, 265-266 (1977). "Mere error or mistake in judgment . . . does not violate the equal protection clause.  There must be intentional discrimination [by the defendants]. . . .  Even arbitrary administration of [prison regulations], without purposeful discrimination, does not violate the equal protection clause." *E & T Realty*, 830 F.2d at 1114 (citations omitted); *McCleskey v. Kemp*, 481 U.S. 279, 292-293 (1987) (simple disparity of treatment between individuals of different races is insufficient to establish discrimination).  "The requirement of intentional discrimination prevents plaintiffs from bootstrapping all misapplications of state [rules and regulations] into equal protection claims.  'Probably no law contrived by man for his own governance ever has had or will be enforced uniformly and without exception.  But the Constitution does not demand perfection.' " *E & T Realty*, 830 F.2d at 1114 (citations omitted).  Consequently,

> [p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Arlington Heights*, 429 U.S. at 265, 97 S.Ct. 555.  Indeed, it is well established that proving intent to discriminate is the essential element of an equal protection claim. *See, e.g.,*; *Hernandez v. New York*, 500 U.S. 352, 359-60, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) ("A court addressing [an equal protection claim] must keep in mind the

> fundamental principle that 'official action will not be held unconstitutional solely because it results in a racially disproportionate impact. . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.'" (omission in original) (quoting *Arlington Heights*, 429 U.S. at 264-265, 97 S.Ct. 555)); *Washington v. Davis,* 426 U.S. 229, 240, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Johnson v. Bush,* 405 F.3d 1214, 1218 (11th Cir.2005); *Citizens Concerned About Our Children v. Sch. Bd.,* 193 F.3d 1285, 1294 (11th Cir.1999); *Elston v. Talladega County Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir.1993); *Mencer v. Hammonds*, 134 F.3d 1066, 1070 (11th Cir.1998); *Parks v. City of Warner Robins*, 43 F.3d 609, 616 (11th Cir. 1995).

*Holton v. City of Thomasville School District*, 425 F.3d 1325, 1348-1349 (11th Cir. 2005). "'Discriminatory purpose,' however, implies more than intent as volition or intent as awareness of consequences. . . . It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979). In a case such as this one, where Plaintiff challenges actions of prison officials, exceptionally clear proof of discriminatory intent is required. *See Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988). Where a plaintiff presents no evidence of purposeful discrimination, the law requires entry of summary judgment in favor of the defendants. *McCleskey*, 481 U.S. at 292; *E & T Realty*, 830 F.2d at 1115.

Since this case is before the court on a properly supported motion for summary judgment from Defendants, Plaintiff bears the burden of producing sufficient evidence that Defendants' actions resulted from intentional discrimination. *Arlington Heights*, 429 U.S. at 265; *Wallis v. J. R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994). Purposeful

8

discrimination can be shown either by direct evidence, *i.e.*, admissions of the defendant, or indirectly by way of circumstantial evidence. *Arlington Heights*, 429 U.S. at 265-266. A plaintiff, however, cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. Instead, the law is clear that a plaintiff must present significant probative evidence to preclude summary judgment in favor of the defendants. *Id*. at 249.

Plaintiff presents no evidence which establishes that he is, in fact, similarly situated with inmates whom he claims received more favorable treatment from Defendants; rather, he merely contends that the grooming policy discriminates against inmates of the Native American faith. As noted, Plaintiff bears the burden of producing sufficient evidence to show that the actions of Defendants resulted from intentional discrimination. *Celotex*, 477 U.S. at 322-324; *Waddell*, 276 F.3d at 1279. A review of the pleadings filed by Plaintiff demonstrates he has failed to meet his pleading burden. He presents no evidence that religious discrimination constituted a motivating factor in the decision that he have his hair cut in accordance with the ADOC personal appearance policy. As noted, Defendants categorically maintain that the grooming policy applies to all inmates within the custody of the Alabama Department of Corrections ["ADOC"]. (*Doc. No. 14, Exh. 1 and Attachments*.) Specifically, all ADOC inmates must adhere to the personal appearance procedures as found

in the inmate handbook which requires male inmates to have a regular haircut,[3] off the neck and ears, sideburns no lower than mid-ear, and clean-shaven.(*Id*.)

Here, Plaintiff does no more than simply make the conclusory legal assertion that Defendants' conduct in requiring him to keep his hair cut short constitutes discrimination against practitioners of the Native American faith. Beyond this self-serving and specious allegation, Plaintiff produces nothing which suggests that religious animus motivated Defendants' actions. Moreover, as previously discussed herein, the evidentiary materials submitted by the parties demonstrate that Defendants based their decision requiring Plaintiff to cut his hair on health, safety, hygiene, and security reasons. In light of the foregoing, summary judgment is due to be granted in favor of Defendants on this claim.

**3. Retaliation.**

Plaintiff alleges that Defendants' actions in requiring him to cut his hair constitutes religious retaliation. In order to present a retaliation claim cognizable under § 1983, a prisoner must demonstrate that (I) he engaged in a constitutionally protected activity, (ii) he suffered adverse treatment simultaneously with or subsequent to such activity, and (iii) a causal connection existed between the protected activity and the adverse action. *Donnellon v. Fruehauf Corporation,* 794 F.2d 598, 600-601 (11th Cir. 1986); *Farrow v. West,* 320 F.3d 1235, 1248-49 (11th Cir. 2003); *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2nd Cir. 2004); *Morales v. Mackalm,* 278 F.3d 126, 131 (2nd Cir. 2002); *Thaddeus-X v. Blatter,* 175 F.3d 378,

---

[3]The barbers at the prisons receive instructions regarding haircut guidelines for male inmates and are not permitted to give special haircuts. (*Doc. No. 14, Exh. 1, Attachment at 19.*)

394 (6th Cir. 1999). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997). Further, conclusory allegations of retaliation are insufficient. *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984) ( "In civil rights . . . actions, courts have recognized that more than mere conclusory notice pleading is required. In civil rights actions, it has been held that a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." ); *Bennett v. Goord,* 343 F.3d 133, 137 (2nd Cir. 2003) (because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations."); *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995).

Plaintiff must allege facts showing that the allegedly retaliatory conduct, requiring him to cut his hair, would not have occurred but for the retaliatory motive, *i.e.*, his religious beliefs. *Jackson v. Fair,* 846 F.2d 811, 820 (1st Cir. 1988). That is, he must allege a causal link between the protected activity and the adverse treatment, and there must be at least a "colorable suspicion" of retaliation for a complaint to survive. *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2nd Cir. 1983). Such a causal connection may be alleged by a chronology of events that create a plausible inference of retaliation. *Cain v. Lane,* 857 F.2d 1139, 1143 n.6 (7th Cir. 1988). Plaintiff must come forward with more than "general attacks" on Defendants' motivations and must produce "affirmative evidence" of retaliation. *Crawford-El v. Britton,* 523 U.S. 574 (1998) (citing *Anderson,* 477 U.S. at 256-57). "The relevant showing . . . must be more than the prisoner's 'personal belief that he is the victim of

11

retaliation.' " *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997) (quoting *Woods v. Edwards,* 51 F.3d 577, 580 (5th Cir. 1995)). Appropriate deference should be afforded to prison officials "in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland,* 65 F.3d 802, 807 (9th Cir. 1995) (citing *Sandin v. Conner,* 515 U.S. 472, 481-82 (1995)). And, because regulatory actions taken by prison officials are presumed to be reasonable, the inmate must produce "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury. . ." *Crawford-El,* 523 U.S. at 598; *Harris,* 65 F .3d at 916-17; *see also Colon v. Coughlin,* 58 F .3d 865, 872 (2nd Cir. 1995) (because claims of retaliation may be easily fabricated, they should be reviewed with skepticism).

Here, Plaintiff's allegations against Defendants are insufficient. Plaintiff presents no facts in support of his retaliation claim. Rather, he merely submits a general allegation that requiring him to cut his hair against his religious beliefs amounts to "religious retaliation." Beyond his own conclusory allegation, Plaintiff offers nothing which suggests that Defendants' actions in compliance with the grooming regulations were motivated by a retaliatory animus. In the absence of such evidence, entry of summary judgment in Defendants' favor is appropriate. *See Harris*, 63 F.3d at 916.

Moreover, even if the Plaintiff had established a prima facie case, and the burden had shifted to the Defendants to show that they would have taken the same action in the absence of the Plaintiff's actions, *see Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008), the result

12

would be the same. As already noted the undisputed evidence shows that the Alabama Department of Corrections applies the hair length policy to all inmates, and there is no evidence that the Defendants' application of that policy to the Plaintiff was any different.

### IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (*Doc. No. 14*) be GRANTED;

2. Judgment be ENTERED in favor of Defendants;

3. The costs of this proceeding be TAXED against Plaintiff for which execution may issue; and

4. This case be DISMISSED with prejudice.

It is further

ORDERED that on or before **October 19, 2012,** the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the

District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 5th day of October, 2012.


          /s/Charles S. Coody
          CHARLES S. COODY
          UNITED STATES MAGISTRATE JUDGE